# Exhibit A

# DrinkerBiddle&Reath
**L L P**

William M. McSwain
215-988-2775 Direct
215-988-2757 Fax
william.mcswain@dbr.com

*Law Offices*

One Logan Square, Ste. 2000
Philadelphia, PA
19103-6996

215-988-2700 phone
215-988-2757 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

August 4, 2015

**VIA E-MAIL**

Assistant U.S. Attorney Michael S. McGarry
Assistant U.S. Attorney John H. Durham
U.S. Attorney's Office for the District of Connecticut
157 Church Street, 23rd Floor
New Haven, CT  06510

    Re:    *United States of America v. Lillemoe et al.*, No. 3:15CR25-JCH

Dear Mike and John:

    This letter is a follow-up to our phone conferences on July 27th and July 30th, during which we discussed, among other things, the government's efforts to search, collect and produce *Brady* and *Giglio* materials. All defendants join in this letter.

    The Court's scheduling order anticipated that these materials would be produced by last Friday, July 31st. We understand that you now believe that it will take several additional weeks for the government to finish searching for and producing the relevant materials. The parties have agreed that we should seek a phone conference with the Court as soon as possible in order to discuss possible changes to the case schedule in light of this delay.

    You have described for us some of the efforts that individuals at the USDA are undertaking to search for relevant documents. In particular, you described the conversation you had with USDA general counsel, Peter Bonner, last week regarding Mr. Bonner's plan to search for certain documents. Mr. Bonner has created a "questionnaire" for USDA document custodians to complete and return to him. He has not yet received responses to his questionnaire, but he has indicated to you that he expects to receive 30 or more responses.

    You noted that the USDA will not search for documents prior to September 2007; requests for information before that date are supposedly too outdated. We disagree with this blanket approach, largely for the reasons already stated in Mr. Tween's July 24, 2015 letter, in which he explained that exculpatory evidence can pre-date the charged conspiracy by several years when, for example, the relevant materials concern "the nature of an ongoing regulatory environment" (like the one here) and concern "a pattern of activity that continued up to the time of the charged conduct" (which is the case here).

*Established 1849*

DrinkerBiddle&Reath
L L P

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 2

You also explained to us that the USDA is focused on automated searches for electronically stored information and evidently will not search for certain categories of documents if doing so would require USDA employees to physically review hard copy documents. We also disagree with this blanket approach. While we understand that the review of paper files can be time-consuming, we do not believe that we have requested searches that are overly broad or burdensome. Further, we do not believe that the search for *Brady* and *Giglio* materials should be dictated by the convenience of the search mechanism.

You have informed us that some of the USDA custodians who were identified in my June 19th letter have since retired. Specifically, the following custodians are no longer with the USDA: Helen Cooney, Larry McElvain, and Martha Keplinger. You agreed that you would confirm whether there are any other custodians on the list who are no longer with the USDA.

Finally, during the last portion of our phone call on July 30th, we went through the nineteen requests from my June 19 letter, and you explained whether the government was searching for materials relevant to each particular request. For ease of reference, I have included those requests below, along with the government's position in bold-faced type. Please let me know if you believe that I have stated anything incorrectly.

1. Any evidence, from 2002 to the present, relating to the following GSM-102 program policy issues, demonstrating that the participation of financial intermediaries as exporters and/or importers was known to and/or accepted by the USDA:

    a. the interpretation and application of 7 CFR § 1493.40(a)(3) under the regulations that were in effect prior to December 18, 2014;

       **The USDA is searching for material related only to the Defendants or their business entities from September 2007 forward.**

    b. the nature of the commercial relationship between the importer on a GSM-102 guarantee and any consignee on a bill of lading presented in a letter of credit related to the guarantee;

       **The USDA is searching for material related only to the Defendants or their business entities from September 2007 forward.**

DrinkerBiddle&Reath

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 3

      c. the nature of the commercial relationship between the exporter on a GSM-102 guarantee and any shipper on a bill of lading presented in a letter of credit relating to the guarantee;

      **The USDA is searching for material related only to the Defendants or their business entities from September 2007 forward.**

      d. whether the exporter on the guarantee must ship the goods to the importer on the guarantee; and

      **The USDA is searching for material related only to the Defendants or their business entities from September 2007 forward.**

      e. whether the exporter on the guarantee may simultaneously buy from and sell to a person or entity holding title to the goods.

      **The USDA is searching for material related only to the Defendants or their business entities from September 2007 forward.**

2. Any evidence, from 2007 to the present, relating to the policy issues mentioned above in the context of the recently revised GSM-102 program regulations, which took effect on December 18, 2014, including but not limited to the reasons for changes within 7 CFR § 1493.10(b), "Credit Facility Mechanism," demonstrating that in making the changes the USDA was codifying prior industry practice.

      **The USDA is not searching for this material.**

3. Any evidence relating to a meeting between Brett Lillemoe and Mark Rowse and Amy Slusher on or about April 1, 2014, demonstrating FAS' knowledge and/or approval of third-party business transactions as long as Defendants' companies did not serve as the GSM exporter.

      **The USDA is searching for this material.**

4. Any evidence relating to the compliance review of Southern Cross Advisors LLC and its affiliates, conducted in or around March 2010, demonstrating that disclosures were made to FAS regarding Southern Cross and GTR business practices, including the submission of transaction documents from Southern Cross for FY2009.

DrinkerBiddle&Reath
L L P

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 4

**The USDA is searching for this material.**

5. Any evidence relating to Pablo Calderon's letters to Mark Rowse, Suzanne Heinen, or Phyllis Fong, demonstrating USDA's knowledge and/or acceptance of GSM-102 transactions wherein the loan transaction is divorced from the physical flow and payment of goods.

**The USDA is searching for this material.**

6. Any evidence relating to: (1) a conference call between Archer Daniels Midland Company ("ADM") and FAS personnel on or about October 2002, which included General Counsel David (D.J.) Smith, Brett Lillemoe, J.D. Longwell of ADM, and Martha Keplinger and Larry McElvain of FAS; and/or (2) a conference call held on or about October 24, 2002, between David Smith and J.D. Longwell and Martha Keplinger, demonstrating FAS' approval of GSM-102 transactions where the loan transaction is divorced from the physical flow and payment of goods.

**The USDA is not searching for this material.**

7. Any evidence, from 2002 to present, relating to non-participant exporters or non-participant importers regarding the use of their bills of lading in relation to GSM-102 guarantees obtained by participant exporters, demonstrating that FAS knew of and/or accepted (1) the use of multiple affiliated corporate entities, and (2) the separation of the physical sale of goods from the interbank loan transaction, including but not limited to records pertaining to:

   a. a meeting with Ignacio Calle of PROINSA (Colombia) and Cargill personnel in the presence of Martha Keplinger in 2002;

   **The USDA is not searching for this material.**

   b. a conference call with personnel of Georgia Pacific and Cargill personnel in 2002 or 2003;

   **The USDA is not searching for this material.**

   c. any meetings or conference calls attended by ADM attorney James (Jim) Shafter and/or Martha Keplinger in 2003 regarding the use of poultry exports under the GSM-102 program for Russia;

   **The USDA is not searching for this material.**

DrinkerBiddle&Reath
L L P

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 5

    d.    a meeting with Brett Lillemoe and Stanley McDermott, representing Globex International Inc., on or about May 12, 2009 in the presence of Mark Rowse and Peter Bonner; and

    **The USDA is searching for this material.**

    e.    a meeting with Brett Lillemoe and John Josserand of AzTx Cattle Co. on or about February 20, 2013 in the presence of Mark Rowse.

    **The USDA is searching for this material.**

8. Any evidence, from 2002 to the present, demonstrating that FAS knew of and/or approved the use of financial intermediaries in GSM-102 transactions, and the roles permitted by such intermediaries, including but not limited to all communications between Hal Taylor and the Bank of Georgia, and any other communications between FAS and prospective GSM-102 foreign bank participants wherein explanations about the program were offered or questions posed and answered.

   **You stated that you would double check, but you believed that Hal Taylor of the USDA is searching for material from September 2007 forward.**

9. Any evidence, from 2002 to the present, relating to the restructuring negotiations involving GSM-102 guaranteed debt, including but not limited to such evidence relating to Alliance Bank of Kazakhstan, demonstrating FAS' awareness that GSM-102 transactions facilitated funding for banks and not the underlying sale of goods.

   **The USDA is searching for this material from September 2007 forward, but only as it relates to the Defendants and their business entities.**

10. Any evidence, from 2002 to the present, reflecting communications with program participants regarding the aggregation of payments of multiple exporters for guarantee allocations, demonstrating FAS' knowledge and/or acceptance of the use of multiple affiliated corporate entities in the GSM-102 registration/allocation process, including any communications or documents that identify multiple exporters as being associated with the same person or entity.

    **The USDA is not searching for this material.**

DrinkerBiddle&Reath
L L P

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 6

11. Any evidence relating to the April 23, 2010 GSM-102 guarantee allocations for the Eurasia region, including but not limited to the CCC credit limit of International Industrial Bank Russia ("IIB") and any GSM-102 exporters registering or attempting to register guarantees for loans, demonstrating that other exporters did register or attempt to register for guarantees involving loans to IIB.

   **You stated that you would reengage with the USDA with respect to this request to determine what exactly it is searching for, if anything.**

12. Any evidence relating to communications by or between: (1) Cargill personnel, to include but not limited to Karla Hennessy, and the USDA, wherein Cargill provided information to the USDA pertaining to Brett Lillemoe, Pablo Calderon, and/or the entities they owned or operated regarding their use of multiple affiliated corporate entities or their use of bills of lading in the GSM-102 program; and/or (2) Jonathan Doster and Simon Brotherton, or any other Bunge personnel, regarding GTR's contractual arrangements or its use of bills of lading in the GSM-102 program.

   **The USDA is searching only Jonathan Doster's files from September 2007 forward.**

13. Any exculpatory or impeaching evidence relating to communications between or among Kathleen Redmond, Stephen West, or Michael Renehan regarding the investigation of Brett Lillemoe, Pablo Calderon, and/or Sarah Zirbes.

   **You are searching for this material.**

14. Any exculpatory or impeaching evidence relating to communications by or between Kathleen Redmond, Stephen West, and Michael Renehan regarding Doug Tween's letter dated December 19, 2014, or Mr. Calderon's letter dated October 31, 2013, to Mr. McGarry and Mr. Durham.

   **You are searching for this material.**

15. Records relating to guarantee allocations dating back to 2003 in Central America, the Caribbean, South America, Eurasia, and Russia, sufficient to show the dollar amounts of:

    a. the GSM-102 guarantee coverage announced;

DrinkerBiddle&Reath
L L P

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 7

> **The USDA is searching for this material, but only from September 2007 forward.**

    b.    the GSM-102 guarantee applications submitted by each participant; and

> **The USDA is searching for this material, but only from September 2007 forward.**

    c.    the GSM-102 guarantees allocated per participant.

> **You stated that you would double check with the USDA to determine if it is searching for this material.**

16. Any records relating to claims processed or audits conducted on guarantees issued where the shipper on the related bill(s) of lading is not the GSM exporter, and/or where neither the consignee nor the "Notify Party" appear on the GSM guarantee. This includes, but is not limited to, the complete and unredacted USDA document production in response to FOIA request 28-2013 (Bates range FAS00001-FAS09683).

> **The USDA is not searching for this material.**

17. Any records of guarantees issued to any Cargill affiliated company (e.g., CFSIT Inc.) in FY2002 and FY2003 that involved bills of lading of shippers not affiliated with Cargill, demonstrating FAS' knowledge that Cargill was "renting" bills of lading from importers that were buying goods directly from Cargill's competitors (e.g., Archer Daniels Midland Company).

> **The USDA is not searching for this material.**

18. Any CCC audit records demonstrating that (1) the Defendants' participation in the GSM-102 program as financial intermediaries was known to and/or accepted by the USDA; (2) the Defendants' use of multiple entities was known to the USDA; and/or (3) that the consignee section of a bill of lading was not checked during an audit.

> **With respect to subparts (1) and (2), the USDA is searching for this material; you stated that you would double check on whether the USDA could search for subpart (3).**

DrinkerBiddle&Reath

Assistant U.S. Attorneys Michael S. McGarry and John H. Durham
August 4, 2015
Page 8

19. Any records relating to claims processed or audits conducted of GSM-102 transactions where: (1) the bill(s) of lading submitted were stamped or otherwise marked explicitly as "Copy," "Certified Copy," "Certified True Copy," "Non-Negotiable," or "Copy Non-Negotiable"; (2) the bill(s) of lading submitted were in no way stamped or otherwise marked "Original," "First Original," "Second Original," etc.; and/or (3) the "Consignee" field or "Notify" field on the bill(s) of lading was either blank or stated "To Order," and nothing more.

**The USDA is not searching for this material.**

Please continue to keep us informed as to the progress of the government's searches for relevant documents. We are available for a phone conference with Judge Hall this week. Thank you for volunteering to take the lead in reaching out to Chambers about requesting such a conference.

Very truly yours,

William M. McSwain

WMM/mb

cc: Douglas M. Tween, Esq. (via email)
Ann C. Flannery, Esq. (via email)
Elizabeth A. Latif, Esq. (via email)