IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **CRIMINAL NO. 3:15-CR-25 (JCH)** |
| v. | : | |
| | | December 11, 2015 |
| **BRETT C. LILLEMOE, ET AL.** | : | |

## GOVERNMENT'S REPLY TO DEFENDANTS RESPONSE TO SUBMISSION REGARDING STATUS REPORT

The Government respectfully submits this reply to Defendants' Response (Doc. No. 72 and 73) in an effort to aid the Court with respect to any potential issues with respect to the ongoing discovery and in an effort to keep the matter on schedule for the criminal trial currently scheduled for October 2016.

In response to the issues addressed in the Defendants submissions, the Government respectfully sets forth the following:

*First*, the Government is fully aware of its discovery obligations and is complying with those obligations and also is, it believes, well beyond what is contemplated by *Brady, Giglio*, and other disclosure obligations. The Government recognizes its disclosure obligations and has complied with and will continue to its disclosure obligations. *See, e.g., United States v. Schwimmer*, 649 F.Supp. 544, 549 (E.D.N.Y. 1986) (citing *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969)). The Government is unaware, at the present time, of any evidence in its possession that is exculpatory or otherwise favorable to the defense that has not already been turned over. Additionally, the Government has continued to gather evidence, much of it being gathered at the request of the defendants, and continues to review such evidence and will make

all material that is exculpatory or otherwise favorable to the defense available to the defense in time for its effective use at trial -- if and when any such evidence comes to light. *See United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001).

Moreover, as the Court is well aware, the Government is currently working with the United States Department of Agriculture ("USDA") and counsel for the USDA to search for additional documents that were not part of the investigative file and that were not in possession of the prosecution team and is doing so notwithstanding the fact that the USDA is a potential victim having lost millions of dollars as a result of the defendants conduct. It has been and remains the Government's position that the disclosure obligations in this criminal matter do not extend to evidence that is not within its control but which is instead within the possession of an entity (here the USDA and the CCC). The USDA is not part of the prosecution team but instead is an entity, at which potential witnesses are currently employed, that provided information in the form of documents and witness statements during the course of its investigation and which did so pursuant to a subpoena and otherwise. The case law is clear that the Government's disclosure obligations do not transform the USDA into part of the prosecution team, even if that entity is part of the federal government and even if various fact witnesses are employed there. *See United States v. Ferguson*, 478 F. Supp. 2d 220, 238-39 (D. Conn 2007); *See also, United States v. Stewart*, 433 F.3d 272, 298 (2d Cir. 2006), *United States v. Diaz*, 176 F.3d 52, 106-07 (2d Cir. 1999).

***Second***, the search that the attorneys and other personnel with the USDA are undertaking at the request of the defendants is a good faith attempt to gather all potentially relevant documents that may be the types of documents the defendants believe exist. If such documents are located by the USDA employees and attorneys performing the search and thereafter produced

to the prosecution team, the documents will be reviewed and produced to the defendants consistent with the Government's ongoing disclosure obligations.

Nevertheless, the defendants appear to take issue with the fact that the Government has not agreed to undertake the search in the precise method that they have suggested and also now claim that it may be unnecessarily broad. However, the Government is undertaking the review, after lengthy discussions with counsel from the USDA as well as with the input from the Information Technology staff from the USDA and are doing so in a good faith concerted effort to find what the defense is seeking and is doing so in a careful professional manner.

In the Defendant's Joint Response (Doc. No. 72 ("Joint Response")) the defendants use the term "agreed upon requests" and assert that the search is not focused on the "agreed upon requests." (Doc. No. 72 at 1). However, this is not an accurate term as there were in fact no specific "agreed upon" requests. In fact, in their letter from Attorney McSwain dated July 21, 2015, attached as Exhibit C to the Joint Response ("McSwain Letter"), the Defendants had indicated quite clearly the following: "We can discuss with you in more detail some of the possible searches (or even specific search terms) that [Attorney] Bonner might employ while searching for documents. We would do this in a spirit of cooperation, but this would not relieve you of your independent obligation to seek out and produce all *Brady* and *Giglio* materials without out help." Thus, it appears that the defendants asserted that they wanted to exercise its independent duty to possibly go beyond what they suggested, but nevertheless exercise its independent duty to comply with the disclosure obligations. It is this independent duty that the Government is undertaking to meet and is doing so with the assistance of the attorneys and employees from the USDA. The fact that the defendants take issue with the precise method

being employed is in contrast to their own admonition reminding the Government of its own independent duty.

The defendants also appear to take issue with the fact that various individuals at the USDA, some of whom may be fact witnesses at trial, may have reviewed a copy of the indictment as part of the USDA's effort to locate potential *Brady* material. *See* Joint Response at 11, Section IV. Again, this underscores one of the difficulties that exists with asking individuals who are not part of the prosecution team, who are themselves employees of the victim organization, to search their files for what could possibly constitute *Brady* or *Brady-type* material. By asking the individuals, many of who are not lawyers, to search their files for documents that would "tend to disprove the allegations in the indictment," the Government was seeking to have individuals with non-legal training look for the types of documents the defendants were seeking in this expanded *Brady* search. The defendants are now claiming that this may have a "chilling effect" on their testimony, yet if these same individuals had not been asked to perform a search for documents that would tend to exonerate the defendants, then the defendants may have taken issue with that as well.

In exercising its own independent obligation and in searching among and within the volumes and terabytes of information, the Government made the decision not to follow in a rote manner the specific requests offered by the defendants. This was done after discussions with USDA counsel and Information Technology personnel who have a working knowledge of the internal workings of their organization as to where items could possibly be located if at all. Additionally, it appeared that some of the requests suggested by the defendants were asking the USDA personnel to search for documents that may or may not even exist and were asking the USDA personnel to search locations that were unsearchable. For example, the defendants asked

that the files of 31 employees be searched.  However, of the 31 employees whose files the Defendants asked to be searched, six of them have either separated from government service, retired, or in the case of one individual passed away.  Obviously some independent judgment needed to be employed.  Similarly, some of the requests asked the USDA personnel to search for documents from as far back as 2002 and in one instance, the request spanned two potential years more than a decade ago where the defendants asked for any evidence relating to "a conference call with personnel of Georgia Pacific and Cargil in 2002 or 2003."  *See* June 25, 2015 Letter from Tween ("Tween Letter").  The Government, in consultation with the USDA attorneys and USDA personnel, declined to search for documents related to a conference call that may have happened sometime in 2002 or 2003 in which the participants were other entities and other individuals and which did not involve the named defendants or any coconspirators and where there did not appear to be any relevance to the crimes charged in the indictment.  It is not clear that any such documents even existed and there does not appear to be any relevance to the elements of the charged crimes.

      Similarly, the Government declined to search for evidence from 2003 relating to "any meetings or conference calls attended by ADM attorney James (Jim) Shafter and/or Marth Keplinger in 2003 regarding the use of poultry exports under the GSM-102 program for Russia."  Simply put the Government and the USDA personnel are engaging in a good faith search for documents that might fall within the definition of *Brady* (though not within the control of the prosecution team) as described in detail in the report submitted by Attorney Bonner.

      Nevertheless, as described in the Discovery Status Report, if any documents existed that were within the files of the individuals who remain at the USDA or were otherwise relevant to

the Defendants or their entities, the search being conducted would capture such documents if any such documents from 2002 or 2003 still exist.

Similarly, as the criminal discovery is provided such that the defendants can prepare their defense in the criminal trial of this matter, the Government, in consultation with the attorneys and personnel from the USDA declined to produce unredacted versions of documents already produced in response to certain FOIA requests made by the defendants. Presumably, the attorneys responding to the defendants FOIA requests had sound legal basis for redacting the portions of the documents produced in response to the FOIA request and it should not be the task of this Court or the prosecution team to revisit those redactions.

***Third*,** the criminal discovery process should not be used as a means to gather information for civil law suits or for bringing cases against entities and or individuals, including individuals who are named as witnesses in this case, either in an effort to take depositions, to seek damages, or arguably worse, to unsettle the witnesses who may be called to testify in this case. Attached as Attachment A is a civil action brought by Defendant Lillemoe, in a case captioned *Lillemoe v. United States Department of Agriculture*, *et al*. 15-2047 (TSC), filed November 25, 2015 in the District Court for the District of Columbia, in which defendant Lillemoe is bringing a *Bivens* claim against the USDA and two individuals who are both potential witnesses in this criminal matter. This raises two concerns. One, the civil case should not be a mechanism to seek to take depositions or otherwise take discovery for use in this criminal matter and two, the evidence in this criminal matter was provided with the understanding that it was being provided to allow the defendants to prepare their defense and the criminal discovery should not be a tool to bring civil lawsuits against potential witnesses.

6

The discovery materials in this case were provided with the following understanding as delimitated clearly in the initial discovery letters provided to the Defendants which read:

> All the materials enclosed with this letter are provided on the condition that you retain sole custody and control of them. While you may, of course, share their contents with your client, no copies are to be given to or left with anyone, including but not limited to your client, his family members, and his associates. These materials are being disclosed to you for the limited purpose of discovery pursuant to the Court's Standing Order on Discovery. These materials are not for public dissemination. If you do not intend to comply with this request, please notify me immediately so I may seek the appropriate Court order.

Discovery Letter March 20, 2015.

Accordingly, to the extent that the defendants are using or are contemplating using this criminal case and this Court, through their expansive claims of the possible existence of potential *Brady* materials, in order to gather additional evidence to bring *Bivens* claims and other civil law suits, the Government would and does object. Thus, the Government will move for a Protective Order from the Court in connection with the production of documents arising out of the extensive search being performed by the USDA and will produce those documents pursuant to a protective order.

*Fourth*, the Defendants request for potential *Brady* materials should not become a litigation tool to cabin the Government's proof at trial. In their Joint Response the defendants state that "to the extent that the scope of the government's case can be confirmed as *not* including allegations that the actions inherent to acting as financial intermediaries were fraudulent, defendants may be able to narrow their *Brady* requests." (Joint Response (Doc. No. at 2)). As discussed above, the Government is aware of its ongoing disclosure obligations and does not see those obligations as fluid depending on what arguments the defendants may or may not advance at trial in their defense. The Government has previously provided all documents in the possession of the prosecution team, to the extent that they exist, that could be deemed

7

exculpatory in nature, as well as all materials that could be used to impeach or discredit Government witnesses.  The Government recognizes its ongoing disclosure obligations and has complied with its disclosure obligations under *Brady* and will do so with respect to the documents received in connection with the ongoing search being undertaken by the USDA attorneys and personnel.  *See, e.g., United States v. Schwimmer*, 649 F.Supp. 544, 549 (E.D.N.Y. 1986) (*citing United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969)).

As to the defendants repeated requests regarding what the evidence will be at trial regarding the defendants acting as financial intermediaries and utilizing the third party model (as that term may or may not be understood differently by different people), the Government intends to prove the allegations in the indictment, including the allegations in Count 23.

The Defendants continue to address the legality or illegality of what other participants in the GSM-102 program may or may not have been doing, but the Government has repeated indicated that this case here will center on the allegations contained in the indictment.  The evidence will establish an intentional lack of candor and deceptive business practices employed by the defendants in connection with their participation in the GSM-102 program, including the fraudulent altering of shipping documents for the purpose of executing financial transactions within the program.  Their business practices were part of their manner and means of the fraud.

In this regard, in Count 23 in particular, Defendant Calderon is charged with knowingly and willfully making a false, fictitious, and fraudulent material statement to Special Agents from the FBI and IRS, when he falsely stated to the Agents that Defendant Lillemoe was his "supplier" and falsely stated that he, Calderon, "purchased commodities from Lillemoe." In truth and in fact, as Calderon well knew, Lillemoe was not his supplier and he did not  purchase commodities from Lillemoe, but to the contrary Lillemoe was a partner and co-conspirator with

whom Calderon orchestrated paper-only transactions.  Accordingly, the fact that the Defendants engaged in "paper-only" transactions is relevant as establishing what their business model actually was and will be highly relevant with respect to the false statements charged in Count 23. It is noteworthy, that Defendant Calderon did not describe his business as engaging in Synthetic Letters of Credit or participating in the GSM-102 program as a financial intermediary, but to the contrary he stated albeit falsely that he bought commodities from Lillemoe.

Similarly, Defendant Lillemoe made misrepresentations regarding his status as an exporter who dealt with clients and negotiated shipping terms as contrasted with his being simply a financial intermediary.  For example in one correspondence Lillemoe wrote to a USDA Program Branch Chief, "[i]n reality we, just like the other exporters in the business, can only compete and maintain our good name in the market by agreeing to extend shipping terms with our clients." (Attachment B at 1).  Lillemoe also wrote, "[w]e had hoped it would happen by now but as it stands it is ***difficult for us to move the stockpiles of U.S. Corn*** and SBM we had registered under GSM."  (Attachment B at 2, (emphasis added)).  He also wrote, "[t]he waning supply of Argentine wheat has loosened up our ***U.S. wheat supplies*** and we'd like to apply some of this volume to our registrations." (*Id.* emphasis added).  It is clear from the Defendants own filings and their own representations to the Court that they do not now contend that Defendant Lillemoe had stockpiles of corn to move nor did he have U.S. Wheat supplies.  Various e-mail correspondence and communications similar to the examples provided here, as well as the altered documents and e-mails such as those referenced in the indictment, will support the allegations in the Indictment that the Defendants devised and executed a scheme to defraud and toobtain money and property.  The evidence will be taken from a number of the GSM-102 transactions many of which will be drawn from the transactions which were specifically identified for the

defendants in prior correspondence.  To the extent other such false statements and statements that tend to support the Government's assertion that the Defendants were engaged in false representations about the true nature business the Government will identify the transaction number for the Defendants.

Moreover, to the extent that the defendants were engaging in paper-only transactions it is also relevant how they acquired the paper, what representations they made about themselves and their entities when acquiring the paper and when applying for the guarantees and what the complete nature of their business practices were.  Accordingly, the Government intends to prove the allegations in the indictment to establish that the business as conducted by these defendants was fraudulent and part of a scheme to defraud.  The conduct of other entities who participated in the GSM-102 program to the extent the defendants would seek to argue that others were engaging in the same type of conduct would not be relevant and would certainly not tend to exonerate the defendants.

*Finally,* for the reasons set forth above, as well as the information provided in the Discovery Status Report, the Government asserts that the search and collection of documents being undertaken is an appropriate search method and should continue as described in the Discovery Report.  Moreover, the Court need not set a briefing schedule to address the process being undertaken by the USDA attorneys and personnel, nor need the Court address on a request by request basis the search being conducted and the specific search requests not incorporated in to the methodology.  The Government is aware of and is compiling with its obligations, and to a large extent is exceeding those obligations.  To the extent that any fact witnesses read the indictment, the Defendants are free to inquire on cross examination if they read the indictment and to what if any extent their having read the indictment chilled or impacted their testimony.

**Conclusion**

    For the above stated reasons, the Government contends that the requested search for potentially *Brady* and *Giglio* material is appropriate and should continue without additional parameters being imposed. Moreover, the Government does seek and will seek reciprocal discovery pursuant to Rule 16.

        Respectfully Submitted,

        DEIRDRE M. DALY
        UNITED STATES ATTORNEY

        /s/

        JOHN H. DURHAM
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. ct05087
        157 Church Street, Floor 23
        New Haven, CT 06510

        /s/

        MICHAEL S. McGARRY
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. 25713
        157 Church Street, Floor 23
        New Haven, CT 06510

## **C E R T I F I C A T I O N**

      I hereby certify that on December 11, 2015 the foregoing Reply to Defendants Response to Submission Regarding Status Report was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

      /s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY