IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 3:15-CR-25 (JCH)** |
| | : | |
| | : | |
| **BRETT C. LILLEMOE, et al.** | : | June 8, 2016 |

### REPLY IN SUPPORT OF PABLO CALDERON'S MOTION TO DISMISS THE BANK FRAUD, WIRE FRAUD, AND CONSPIRACY COUNTS OF THE INDICTMENT

Mr. Calderon challenges the Indictment for failure to state an offense. An indictment which alleges acts, none of which are illegal, does not satisfy Fed. R. Crim. P. 12(b)(3)(B)(v) and must be dismissed.

The Indictment in this case, through the 21 pages in Count One, describes the alleged wrongdoing with sufficient specificity and detail as to reduce materiality to a question of law and contractual interpretation. The Government's Opposition to this Motion ("Gov. Opp."), ECF No. 139, does not argue the illegality of the facts set out in the Indictment. Instead, the Government adduces new evidence not pled in the Indictment or previously raised with the Court. By adducing facts from outside the four corners of the Indictment to argue its validity, the Government invites the Court to usurp the grand jury's role of determining probable cause. The Government also reverses its position on several factual allegations that it has said were included in the Indictment only as context for the alleged conspiracy, rather than as a separate basis for liability. The Court should set aside all these arguments.

## I. The Guarantee Contract

As explained in the Memorandum in Support of the Motion to Dismiss ("Def. Mem."), ECF No. 110, the representations and certifications required in a guarantee application are described in 7 CFR §§ 1493.40 and 50. The representations and certifications required in an Evidence of Export Report ("EOE") are described in 7 CFR §§ 1493.80 and 90. Both §1493.50 and §1493.90 require by incorporation in the guarantee application and EOE a certification that the information in § 1493.30 has not changed, i.e., that the participant's address hasn't changed nor has the participant been debarred or suspended from another government agency program.

The terms of the guarantee as a contract between the U.S. Department of Agriculture's Commodity Credit Corporation ("CCC") and the named guarantee exporter or its assignee are contained exclusively in the language of the guarantee, the guarantee application, the EOEs, and in language incorporated by reference. As long as the representations and certifications made therein are truthful and CCC concurs (i.e., issues the guarantee), the guarantee is valid and no fraud has occurred. The purpose of any other transactional document required, e.g., a photocopy of a bill of lading ("BL") in a claim, is none other than evidence supporting the representations in the application and EOEs or to calculate claim amounts. Def. Mem. at 14. The content of a copy BL cannot be a basis for fraud on CCC, unless it supports false information contained in the guarantee application or EOE. The Indictment makes no such allegation.

## II. The Indictment Fails to State Offenses of Bank or Wire Fraud

The Government does not dispute Mr. Calderon's assertion that "the Indictment does not allege any misrepresentations in the applications or the EOEs," Def. Mem. at 13, at least not for the two guarantees set out in detail in the Indictment. Instead, the Government raises as an example of a material misrepresentation a third guarantee in which it alleges a date has been

altered. Gov. Opp. at 8-12.[1] On the face of the Indictment, that purported misrepresentation was not presented to the grand jury. In an email by Mr. Durham to attorney Douglas Tween dated February 29, 2016 (Exhibit A), Mr. Durham explained regarding the third guarantee:

> This GSM-102 was not included in our earlier list inasmuch as it was discovered only after that list was compiled. Please note that as we continue to review documents, there very well may be additional alternations involving additional GSM102's that we will uncover. If and when that happens, we will pass the information along to you.

In this email, the Government refers to the "earlier list" provided to the defense on July 10, 2015, more than four months after the date of the Indictment. The Government thus concedes that the proposed guarantee with an alleged misrepresentation in the application was only identified after the Indictment date.

In any case, the face of the Indictment has no indication that the grand jury was presented with or ever considered any alleged material misrepresentation in a guarantee application or EOE, which is the dispositive question for the bank and wire fraud charges. "Even though the indictment is drafted to charge the essential elements, the question remains whether on its face it presents evidence which assures us that such essential elements were presented to the jury and deliberated upon by them in returning the indictment." United States v. Silverman, 430 F.2d 106, 111 (2d Cir. 1970); see also Russell v. United States, 369 U.S. 749, 770-771 (1962). "To allow the prosecutor, or the Court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the Indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant

---

[1] To the extent the Government claims that its evidence shows that the dates on two BLs were altered and that such alleged alterations were material, Gov. Opp. at 8-12, Mr. Calderon did not perform any such alteration and was unaware of any such alteration if and when it was submitted to a bank.

3

could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell, 369 U.S. at 770.

On the face of the Indictment, the alleged facts the grand jury did consider are detailed in ¶¶ 29 through 46 of the Indictment. These paragraphs describe the manner and means of the conspiracy to commit bank and wire fraud of which the defendants are charged. As none of these alleged facts constitute a violation of the provisions in 7 CFR § 1493, the Indictment fails to state the offense in regards to the bank and wire fraud charges.

Specifically, ¶¶ 40, 41, 43 and 44 of the Indictment refer to BLs which were allegedly altered by changing stamps or shading certain sections of the BLs. As explained in detail in Def. Mem., based on the facts as alleged in the Indictment, such alterations cannot be material as a matter of contractual interpretation and law and therefore these paragraphs of the Indictment do not state an offense.

¶¶ 29 through 33 allege that the defendants created multiple companies "for the purpose of obtaining and utilizing a greater share of the allocation of guarantees from the GSM-102 program." Indictment, ECF No. 1, ¶ 29. "[The defendants] did take steps to create the appearance that the entities that they operated and controlled operated independently in order to increase the likelihood that the entities would obtain a greater allocation of guarantees from the GSM-102 program." Id. ¶ 30. "[The defendants] did open, control, and use multiple bank accounts in the names of the various entities." Id. ¶ 31. "[The defendants] would and did change the footer portion of documents by removing the address on applications sent to the GSM-102 administrators so as to make it more difficult for the officials administering the GSM-102 program to detect that they were acting in coordination." Id. ¶ 32.

7 CFR § 1493.30 defines the qualification requirements for participation in the GSM-102 Program (the "Program"). An applicant company must submit little more than its address, the legal form of doing business, and a certification that neither it nor its principals are debarred or suspended from participation in U.S. Government agency programs. Notably, the regulations in force during the September 2007 to January 2012 Indictment period do not require the disclosure of related companies qualified to participate in the Program.[2] The requirement to disclose related participants became effective with the amended regulations in force as of December 18, 2014.[3] The Government has not alleged any obligation for the defendants to have disclosed these relationships under the regulations. Likewise the Program regulations do not require that a participant company be a physical exporter of commodities, either before December 2014 or after. Before December 2014, disclosure of the applicant's type of business was not required; afterwards, the pertinent section, § 1493.30(4)(i), requires a description of the nature of the applicant's business ("e.g., agricultural producer, commodity trader, <u>consulting firm</u>, etc.") (emphasis added). The amended regulations now explicitly recognize the participation of companies whose only role is as a financial intermediary.

As explained above, the Program regulations do not forbid the participation of multiple related companies, and explicitly acknowledge the practice in the most recent amendment. Before December 2014, disclosure of the practice was not required, and therefore not reporting company affiliations was not in violation of the regulations. Likewise, that separate companies have separate bank accounts is not barred by Program regulations. Further, there are no explicit references nor inferences in the regulations that related companies are treated differently than

---

[2] <u>See</u> CCC Export Credit Guarantee Program (GSM-102) and CCC Intermediate Export Credit Guarantee Program (GSM-103), 59 Fed. Reg. 52866, 52879 (Oct. 19, 1994) (codified as amended at 7 C.F.R. § 1493).

[3] <u>See</u> 79 Fed. Reg. 68589, 68599 (Nov. 18, 2014) (codified as amended at 7 C.F.R § 1493.30 (a)(5)).

unrelated companies. The fact that the defendants' companies were participating shows that the disclosure of the address was made to CCC as required by § 1493.30.[4]

Finally ¶¶ 34-39 and 42-46 describe other behavior which is actually standard procedure in Program transactions and does not constitute a violation of Program rules. Among other facts, these paragraphs allege the defendants did not physically ship the goods, did "mirror" transactions to obtain shipping documents by paying a small fraction of the actual export sales price, and executed commercial invoices representing sales between entities that they controlled. These alleged facts are the basic components of a Program transaction executed by a financial intermediary, a practice which the Government has repeatedly represented in this Court it does not intend to criminalize.

### III.     Dismissal Under Rule 12 is Appropriate in the Instant Case

As mentioned above, this Court should set aside arguments based on alleged facts outside the four corners of the Indictment. The Government's Opposition prefaces such facts with introductions such as "it is anticipated that the evidence will establish . . . ." After those arguments are discarded not much is left to address in the Opposition. Perhaps it is worth mentioning one example of the Government's faulty logic. The Government argues that if CCC had known the defendants were "intentionally circumventing the Regulations," Gov. Opp. at 21, it would have disqualified their companies and the subsequent applications in which the defendants certified they did qualify are an additional basis for fraud. The premise of this reasoning is false because the defendants were not circumventing the regulations based on the facts alleged in the Indictment.

---

[4] During the Indictment period, CCC issued approximately 350 guarantees to the defendants' companies. The first field of each guarantee is the name and address of the company applying for the guarantee.

The Government relies heavily on United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998). Alfonso, however, can be distinguished, as that case addresses the insufficiency of the evidence, not the insufficiency of the indictment. The indictment there accurately states the elements of the offense and "the approximate time and place of the robbery." Id. at 776 (emphasis added). "The indictment does not specify what it was that the defendants allegedly conspired to steal or precisely how the conspiracy would have affected interstate commerce." Id. The district court then dismissed the relevant count on the basis that the "government had failed to satisfy the jurisdictional requirement." Id. at 774 (quotations omitted). By referring to the insufficiency of evidence adduced by the government — not on the face of the indictment — the Alfonso district court did not address whether the indictment was sufficient. The Second Circuit overturned the district court's ruling on insufficiency of evidence grounds, not a ruling on the insufficiency of the indictment. The instant Motion concerns the latter, not the former, and therefore Alfonso is inapposite for the decision at hand. Further, in contrast to Alfonso and relying solely on the alleged facts in the instant Indictment, the Court can rule as a matter of law that the alleged alterations were not material and that no offense is stated.

The Government states that deciding an issue of materiality lies solely within the province of the jury. Gov. Opp. at 1. Mr. Calderon agrees that the Court cannot decide materiality, but disagrees with the inference that the Court cannot decide immateriality. Materiality, or lack thereof, is decidable based on sufficiency of facts and the law. The question of who decides depends on whether the decision supports conviction or acquittal. Affirmation of materiality as an element of an offense can only be decided by jury because of the Sixth Amendment constitutional right to trial by jury. This is the essence of the ruling in United States v. Gaudin, 515 U.S. 506 (1995). However, neither Gaudin nor Neder v. United States, 527 U.S. 1 (1999),

bar a court from ruling as a matter of law on a lack of materiality, as the constitutional rights of the defendant cannot thereby be violated. Further, a sufficiency of facts for immateriality need not be found by the jury, if sufficient facts are alleged in the indictment, as they are in the instant case. Nothing bars this Court from deciding pretrial that merely changing a stamp or shading a BL is not a material alteration.

In <u>United States v. Aleynikov</u>, 676 F.3d 71, 76 (2d Cir. 2012), the Second Circuit reversed the convictions on both counts and further concluded that the indictment was legally insufficient for failure to state an offense. One of the charges was a violation of the Economic Espionage Act of 1996. As a result of that ruling Congress promptly expanded the scope of the law to include the behavior alleged in Aleynikov's indictment. In the instant case, the Program regulations should be read as written, not as the Government wished they were written.

### **<u>Conclusion</u>**

To reprise on the analogy introduced in this case by one of the prosecutors, a dozen ski masks doth not one bank robbery make. For the foregoing reasons, Mr. Calderon respectfully requests that the Court grant his Motion to Dismiss.

                                            Respectfully submitted,

                                            /s/_____
                                            Douglas M. Tween
                                            Linklaters LLP
                                            1345 Avenue of the Americas
                                            New York, NY 10105
                                            (212) 903-9072
                                            douglas.tween@linklaters.com

                                            *Attorney for Defendant Pablo Calderon*

## CERTIFICATE OF SERVICE

I, Douglas M. Tween, counsel for defendant Pablo Calderon, hereby certify that on June 8, 2016, I caused a true and correct copy of the foregoing Reply in Support of Pablo Calderon's Motion to Dismiss the Bank Fraud, Wire Fraud, and Conspiracy Counts of the Indictment to be served by the Court's electronic filing system upon:

Michael S. McGarry
U.S. Attorney's Office – NH
157 Church Street
New Haven, CT 06510
(203) 821-3751
michael.mcgarry@usdoj.gov

John H. Durham
U.S. Attorney's Office – NH
157 Church Street
New Haven, CT 06510
(203) 821-3751
john.durham@usdoj.gov

John T. Pierpont
U.S. Attorney's Office - CT
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3735
jpierpont@usa.doj.gov

Elizabeth Latif
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275 0166
elatif@daypitney.com

William McSwain
*Admitted Pro Hac Vice*
Drinker Biddle & Reath LLP
One Logan Square, Ste. 200
Philadelphia PA 19103
(215) 988-2775
william.mcswain@dbr.com

James T. Cowdery
Cowdery Ecker & Murphy
280 Trumbull St # 22
Hartford, CT 06103
(860) 278-5555
cowdery@cowderymurphy.com

Ann C. Flannery
A*dmitted Pro Hac Vice*
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(215) 636-9002
acf@annflannerylaw.com

/s/_____
Douglas M. Tween
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9072
douglas.tween@linklaters.com