UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:15-CR-00025-JCH |
| | : | |
| v. | : | |
| | : | |
| BRETT C. LILLEMOE, | : | |
| PABLO CALDERON, and | : | August 29, 2016 |
| SARAH ZIRBES, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM OFFERING EVIDENCE OR ARGUMENT BLAMING THE VICTIMS OR IMPROPERLY ARGUING GOOD FAITH**

The Government respectfully moves this Court, *in limine*, for an Order precluding the defendants from introducing any evidence or argument that the various banks and the United States Department of Agriculture ("USDA") Commodity Credit Corporation ("CCC") who were defrauded in this case were negligent or otherwise not sufficiently vigilant in how they administered the GSM-102 program, and that any alleged negligence or lack of vigilance by the banks or the CCC now provides a defense to the fraudulent conduct of the Defendants.  The Second Circuit has unambiguously joined other Circuit Courts in holding that a victim's conduct does not, as a matter of law, negate a defendant's intent to defraud and is therefore irrelevant. Accordingly, this Court should preclude any evidence or argument regarding such a defense.

Moreover, as addressed in part in a separate motion *in limine* regarding conduct of other uncharged entities (Government's Motion *In Limine* to Preclude Defendant's From Offering Evidence Concerning the Conduct of Other Parties (hereinafter "Motion Concerning Other Parties")), the Defendants similarly cannot offer evidence related to negligence or lack of vigilance on the part of the banks or the CCC and how they conduced business with respect to the participation of other companies in the USDA program in an attempt to re-cast an otherwise

1

prohibited "blame the victim defense" as a purported "good faith defense." As argued elsewhere, the extent to which other companies or individuals engage in conduct similar to that alleged here – and whether they were successful in submitting fraudulent or altered documents – is irrelevant to the fraud charges brought against each defendant. Accordingly, any evidence or argument regarding whether the banks or the CCC were similarly defrauded by other non-charged individuals or entities because of their own purported negligence or lack of vigilance would be improper as it would constitute blaming the victims and would tend to mislead or confuse the jury.

Finally, the defendants should be precluded from arguing that they did not have the requisite intent to defraud because they believed that the foreign banks would, regardless of the altered documents, pay back the loans and everyone would make money. This is irrelevant and a form of jury nullification, both of which should preclude advancing such an argument.

Therefore, the Government respectfully requests that the Court grant this motion *in limine* and preclude any evidence or argument for such defenses.

I. **BACKGROUND**

On February 20, 2015, a Grand Jury sitting in New Haven, CT returned a twenty-three count indictment charging the defendants Brett C. Lillemoe, Pablo Calderon, and Sarah Zirbes, in relation to their participation in a mail fraud and wire fraud scheme in connection with the USDA's Export Credit Guarantee Program (GSM-102) ("the Program"). As the Court is well aware, the scheme involved presenting fraudulent and altered documents to the banks involved in the transactions and defrauding the banks out of funds under their control by depriving them of information necessary for them to make discretionary economic decisions regarding the GSM-102 transactions.

The fraudulent scheme was used to defraud entities such as Deutsche Bank, A.G., and Co-Bank, to obtain moneys, funds, assets, credits, and other property that Deutsche Bank, A.G. owned or controlled.  The property that was obtained from Deutsche Bank, A.G. was obtained through materially false or fraudulent pretenses, representations, or promises.  In order to execute the scheme, the defendants presented Deutsche Bank, A.G. and Co-bank with altered and falsified shipping documents; including altered bills of lading.  The shipping documents were altered and falsified in connection with securing funding on a loan backed by a foreign Letter of Credit and guaranteed by the Program.

**II.     Discussion**

In the Defendants' filings and in representations made to the Court by counsel, the defendants appear to be planning to introduce a defense – either through cross-examination or through witnesses – based in part upon the theory that other parties engaged in similar conduct and due to the negligence or the fault of the victims, got away with it.  For example, the defendants have sought through Rule 17(c) non-party subpoenas, among other documents, copies of documents stamped "Copy," or "non-negotiable," in an apparent attempt to find any and all documents that may have slipped through the screening process and for which guarantees were issued or on which claims were paid.  More specifically, counsel represented, for example, that there have been claims, or at least one claim in the universe of a couple of hundred (June 19, 2016 Hearing Tr. at 76-77), where "there's at least one bill of lasing that says copy non-negotiable that [a claim] was paid on."  *Id.* at 77.

The subpoenas recently served on the USDA-FAS similarly seek "bills of lading and the related letters of credit that were submitted to FAS as part of a GSM-102 compliance review or audit from 2010-2014 that were stamped or otherwise marked explicitly as "Copy,"

3

"Photocopy," "Certified Copy," "Certified True Copy," "Non-Negotiable," or "Copy Non-Negotiable."  The subpoenas are not limited to transactions involving the Defendants' entities, but instead are plainly designed to seek documents that might evidence that other entities may have committed fraud and gotten away with it.  This is not an appropriate defense.  More particularly, in their memorandum in support of their motion for subpoenas (Dkt. No. 103), defendants sought information to "show how other participants communicated their business practices to the USDA and the Program administrators" and information that "will show that relevant practices were employed by other Program participants within the Program with the acceptance of the USDA, and will contribute directly to the Defendants' 'good faith' defense."  Doc. 103-1 at 7–8.  This again appears to be advancing an argument that the victims, the USDA and/or the banks, were negligent or not sufficiently vigilant in enforcing the regulations and therefore it became acceptable for the defendants to submit altered and fraudulent documents.

Though the Defendants have not submitted either a witness list or a defense exhibit list, nor have they provided any Rule 16 disclosure to the Government, it nonetheless appears that, in common parlance, they plan to advance a defense of: "We submitted fraudulent altered documents in the past and we were getting away with it, and maybe others were doing it and getting away with it too, and the banks and USDA didn't stop us, so we therefore had 'good faith' that it was all 'O.K.'"  Additionally, it is anticipated that the Defendants will likely argue that since they ultimately expected the foreign banks would make good on and pay on the letters of credit and the USDA wouldn't have to pay on the guarantees that it would all work out in the end.  Neither of these arguments is a permissible defense to fraud.

A. THE COURT SHOULD PRECLUDE EVIDENCE OR ARGUMENT THAT VICTIMS' NEGLIGENCE OR LACK OF VIGILANCE IS A DEFENSE TO FRAUD.

It is not a defense to fraud to "blame the victim" of negligence or lack of vigilance, just as it is no defense to burglary charges that the victim left his door unlocked. *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004) (explaining that the purpose of the federal fraud statutes is "not to grant permission to take advantage of the stupid or careless"); *United States v. Amico*, 486 F.3d 764, 781 (2d Cir. 2007) (agreeing with "[t]he majority of circuits to address the issue [, which have held] that a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud"). As the Second Circuit articulated in *United States v. Isola*, 548 F. App'x 723, 725 (2d Cir. 2013) (summary order) "evidence of a particular lender's unreasonableness is irrelevant to the materiality of [the defendant's] false statements because materiality is an objective question." Numerous circuit courts have endorsed this basic principle.[1] As the Second Circuit has articulated, "[w]e refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." *Thomas*, 377 F.3d at 243 (quotation marks and citation omitted).

In *Thomas*, the Second Circuit upheld a District Court's decision to force defense counsel to move on from questioning representative of the victim entity about his purported lack of caution and diligence in dealing with the defendant. In highlighting that it is nearly uniform law

---

[1] *See also United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) (approving jury instruction that "it is not a defense that the bank might have prevented its losses had it better internal controls or procedures"); *United States v. Catalfo*, 64 F.3d 1070, 1078 (7th Cir. 1995) ("Fraud remains fraud even if the victim should have acted more prudently."); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (rejecting defense based on the victim's failure to have taken steps to uncover the fraud and concluding that "[t]he victim's negligence in not a defense to criminal conduct").

to reject a defense of the victim's negligence, the Second Circuit emphasized that "the victim's gullibility or his own criminal background is not relevant to the inquiry as to whether the defendants were properly convicted . . . . If we held otherwise, we would be inviting con-men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection. We decline to so hold." *Id.* at 243-44 (internal citations omitted). *See also United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (Easterbrook, J., writing in False Claims Act case, "laws against fraud protect the gullible and the careless—perhaps especially the gullible and the careless—and could not serve that function if proof of materiality depended on establishing that the recipient of the statement would have protected his own interests.")

In this case, a relevant inquiry for the jury is whether Lillemoe, Calderon and Zirbes had the requisite knowledge and intent to defraud the banks and the CCC. Any suggestion either through cross-examination of bank employees or of the USDA CCC officials that the employees of banks or the employees of the USDA CCC program did not demonstrate an appropriate level of vigilance in administering the Program or demonstrated a lack of diligence in enforcing the Program's regulations — or any suggestion that they could have done more to stop, prevent, or uncover the defendants' fraud — is irrelevant and runs the risk of confusing the jury.

As discussed in the Government's i*n limine* Motion Concerning Other Parties at 12-14, 14 n. 4, the Defendants appear to be preparing a defense based in part on the argument that a claim (or claims) under the GSM-102 Program have, in the past, been paid in a situation in which a "Copy" had been submitted rather than an Original. *See* Hearing Tr. 76:10–77:5 (June 17, 2016). Such an argument or defense is impermissible as it is not relevant. First, if a Bill of Lading were stamped "copy" that would indicate that the Program participant had been candid

6

and transparent in submitting a copy and not engaged in intentional fraud to mislead the USDA or the U.S. Bank at issue. Accordingly, that "other conduct" evidence is simply not relevant. Second, if in fact such a claim were processed and paid when it presumably should not have been, and if it occurred and was undetected by the Program administrators, this would be simply human error and amounts to a "blame the victim" type defense. As the Third Circuit held in *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995), "[t]he negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct." Similarly, in *United States v. Amico*, the Second Circuit, in rejecting the defense to mail fraud that "the victim could have discovered based on external sources that the representation was false," held that "the 'reasonable victim' defense does not apply to allegations of mail fraud under § 1341." *Amico*, 486 F.3d 764, 780 (2d Cir. 2007).[2]

This trial is not an opportunity for the Defendants to put the USDA CCC program on trial. Nor is it an opportunity for them to argue -- in essence -- that because the proverbial "government bureaucrats" had issued guarantees in the past based on fraudulent documents or

---

[2]     Moreover, as addressed in the Motion Concerning Other Parties, the fact that the Defendants might be able to establish that certain transactions were approved using copies, does not provide a basis for a "good faith" defense or an argument regarding a lack of materiality. The Defendants would presumably have to establish that the practice occurred and was not the result of human error or mistake, and they would then also have to establish that the decision makers at the USDA CCC and U.S. financial institutions were *aware of and condoned* such conduct, and finally they would have to establish that the defendants were aware that the USDA CCC and U.S. financial institutions approved of such conduct. The failure (or purported negligence) of the USDA CCC and U.S. financial institutions to catch the submission of documents that did not conform with the requirements of the letters of credit and/or were not in compliance with federal regulations due to their lack of vigilance or negligence is far from knowingly condoning such conduct. Thus, short of taking the stand in their own defense the Defendants obviously cannot argue that such other transactions informed their level of intent. Moreover, the fact that their attorneys have been searching high and low and serving numerous subpoenas fishing for examples of such copies, belies any argument that they were aware of the other transactions, incorporated them into their business model, and therefore had a good faith belief that such conduct was acceptable.

based on 'non-negotiable copies' or because they had paid on a guarantee or guarantees that were not supported by proper documents (described to the Court as one occasion in a universe of hundreds) that it eliminates or nullifies the Defendants' criminal intent. The Defendants should not be permitted to argue that the fraudulent documents they knowingly submitted were not relevant to the USDA or the banks merely because other improper documentation had not been detected previously. This is precisely the type of argument that Courts have sought to prevent by not permitting a 'blame the victim defense' in sophisticated fraud cases. *Thomas*, 377 F.3d at 243 (victim's gullibility irrelevant); *Amico*, 486 F.3d at 780 (victim's lack of sophistication not relevant to fraudulent intent).[3]

To this end, District Courts have excluded lines of cross examination where counsel has sought to create the appearance that the victim could have or should have done more to prevent the fraud, and Circuit Courts have affirmed. In the First Circuit case of *United States v. Callipari*, 368 F.3d 22, 37 (1st Cir. 2004), *vacated on other grounds*, 543 U.S. 1098 (2005) The Circuit approved of the lower court's decision excluding what it termed a "blame the victim" line of cross-examination and noted that "[t]he court was well within its discretion to exclude evidence suggesting that [the victim], rather than [the defendant] and his co-conspirators, was to blame for the loss." *Callipari*, 368 F.3d at 37. Similarly, in *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) the Seventh Circuit affirmed a conviction where the excluded testimony would have "improperly shifted the jury's attention away from the knowledge and intent of [defendant] and focused instead on the beliefs of the victims of the alleged scheme to

---

[3]  *See also United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000); *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000); *Coyle*, 63 F.3d at 1244 (3d Cir. 1995); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991); *United States v. Maxwell*, 920 F.2d 1028, 1036 (D.C. Cir. 1990); *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980).

defraud." *Biesiadecki*, 933 F.2d at 544. It is well settled that the federal fraud statutes do not put victims on trial because "[t]hose who are gullible, as well as those who are skeptical, are entitled to the protection" of the federal fraud statutes. *Id.*

Along these lines, the defendants should also be precluded from suggesting to the jury that the federal regulations should have been clearer in an attempt to argue they did not have the requisite intent to defraud. *See, e.g.*, Ruling re: Pablo Calderon's Mot. to Dismiss (August 1, 2016) (Doc. No. 110) (noting that defendants claim that the language in the regulations "does not on its face require an 'original' BL" but instead "negotiable bill(s) of lading"). The issue here is not what the regulations said, but the criminal intent of the Defendants in perpetrating their scheme and falsifying documents. Defendants will presumably have to take the stand to establish their intent and state of mind, including whether they thought the documents they submitted were authentic and not fraudulent. However, neither they nor their counsel should be permitted to argue that the regulations should have been more clear, should have said "original" instead of "negotiable," or the USDA-CCC program administrators should have done more or done something different.

It has been established that this sort of evidence should be excluded under Federal Rule of Evidence 401. Moreover, it should also be excluded as substantially more prejudicial than probative under Rule 403. The Government's requested relief is consistent with this Court's ruling in *United State v. Litvak* where the Court ruled that the defendant may:

> . . . cross-examine government witnesses about what they actually did, he **may not ask questions or make arguments** that suggest there are things the government witnesses should have done. While the former line of argument may reasonably be part of [defendant's] efforts to demonstrate that the government's witnesses are not "reasonable investors," and that their testimony that [defendant's] alleged misrepresentations were important to them therefore fails to establish materiality for purposes of the securities laws, the latter

> line of argument impermissibly suggests that the government's witnesses could have avoided the harm that purportedly befell them by taking additional actions. The court agrees with the parties that this is the line that must be drawn pursuant to the principles of law outlined above, as well as Rules 401 and 403 of the Federal Rules of Evidence.

*United State v. Litvak*, No. 3:13-cr-19 (JCH), Ruling Re: Motions *In Limine* (Dkt. No. 432) at 23-24 (citing *Thomas* and *Isola*). Consistent with the rulings of this Court as well as the Second Circuit and numerous other Circuit Courts, the Defendants should not be permitted to put their victims' conduct, or any purported lack of vigilance, or their failure to catch the Defendants earlier, or the failure to detect similar wrong doings – if any – by other industry professionals, on trial.

Said another way, the defendants may not ask questions nor make arguments that suggest there are things the USDA CCC officials or bank officers should have done. *See Id.* (Litvak hearing, 3:13-cr-19 (JCH), Dkt. No. 432, at 23-24). The Defendants have advanced arguments in prior hearings to the effect that the false statements were not the regulations don't explicitly prohibit the use of a copy of a copy or don't explicitly state that it is acceptable to white-out a document and submit it as authentic or don't explicitly state that a date can't be altered or don't explicitly state that it is unacceptable to stamp the word "Original" on a non-negotiable copy. However, the victims or victim representatives, be it bank officers or government regulators, are not required to conceive *ex ante* of every possible machination of fraud of which the human mind might conceive and promulgate regulations or policies that explicitly prohibit every variation of fraudulent conduct. To permit questions or arguments that suggest the bank officials and regulators should have done more, or didn't explicitly tell the defendants that their conduct was unlawful, is precisely the brand of victim blaming that the Court should preclude.

### B. THE ANTICIPATED GOOD FAITH ARGUMENT IS NOT APPROPRIATE

Additionally, the Government anticipates that the Defendants will seek to argue (either through cross-examination of Government witnesses or as presented in a defense case) that the fraudulent acts of altering bills of lading, covering up white-out with shading, stamping the word "Original" on certified copies non-negotiable, and changing dates on bills of lading were justified or didn't matter because, as the argument goes, the banks had accepted such documents in the past, or the USDA had not rejected such documents from them or other GSM-102 participants in the past, and, therefore, they had a "good faith" belief that they could submit such altered documents. As discussed above, this is tantamount to a blame the victim argument and as discussed in more detail below, this is not an appropriate good faith defense.

Additionally, the Government anticipates that the Defendants may endeavor to argue that they expected everything ultimately to work out in the end and that therefore they acted in "good faith." More particularly, it is anticipated that the Defendants may advance the argument that because the foreign banks were approved by the USDA – CCC Program, and because the Defendants believed, expected, or anticipated that the foreign banks would ultimately perform on the letter of credit, and since the various participants, including the banks and the USDA, were generally making money on the deals, that even if the Defendants lied in the first instance in order to get the GSM Guarantee and to obtain the Letter of Credit, that they were acting in "good faith." Put simply, the defendants might argue that they did not have the requisite intent to defraud because they believed "everything would work out." However, "no amount of honest belief that the scheme will ultimately work out excuses any fraudulent actions or representations." *See* Sand, *Modern Federal Jury Instructions* § 44.01, at 44-35

11

As the Second Circuit explained in *United States v. Rossomando*, 144 F.3d 197, 201 (1998) "where a defendant deliberately supplies false information to obtain a bank loan, but plans to pay back the loan and therefore believes that no harm will 'ultimately' accrue to the bank, the defendant's good-faith intention to pay back the loan is no defense because he intended to inflict a genuine harm upon the bank -- *i.e.*, to deprive the bank of the ability to determine the actual level of credit risk and to determine for itself on the basis of accurate information whether, and at what price, to extend credit to the defendant." (citing *United States v. Dinome*, 86 F.3d 277, 280, 284 (2d Cir. 1996) (holding that intentionally supplying false information on mortgage application was proper basis for mail fraud conviction because it deprived bank of right to control its assets and diminished the ultimate value of the [mortgage] transaction to the bank as defined by its standard lending practices whether or not a subsequent default ensued) (internal quotations marks and citations omitted, alteration in original). *See also, e.g. United States v. Ingram*, 490 Fed. Appx 363, 367 (2d Cir. 2012)

To the extent the defense wants to elicit or emphasize the fact that the Defendants anticipated that the foreign banks would remain solvent and that the U.S. banks would ultimately be paid back regardless of the fact that the letters of credit and thus the Guarantees were backed by fraudulent documents, this is not a defense to intentionally submitting fraudulent documents. As in *Dinome*, the false information in the form of the fraudulent bills of lading significantly diminished the ultimate value of the GSM-102 transaction to the banks as defined by the Program and appropriate regulations, regardless of whether or not a subsequent default ensued. *See Dinome*, 86 F.3d 277 at 284.  Accordingly, any such defense should be precluded as irrelevant.  The Second Circuit has previously held that the defense of hoping or planning to make money on some future deal in order to pay people back is simply not a defense to fraud.

12

*See United States v. Shvartsman*, 317 Fed. Appx. 68, 70-71 (2d Cir. 2009) (finding that, as the district court noted in excluding the testimony at issue, the defense of "I expected to get a lot of money on another deal and pay back the people I defrauded" is "not a permitted defense").

Thus, following the Second Circuit precedent of *Shvartsman*, the Government asserts that the defense should not be permitted to call witnesses or elicit testimony relating to the defendants' hopes and expectations that the foreign banks would pay on the letters of credit or that -- notwithstanding the fraudulent paper -- they hoped or believed that the USDA would honor the guarantee and make the bank 98% whole.  Simply put, the Government submits that defendant's purported expectation that the deal would work regardless of, or in spite of, the false and altered documents is simply not a basis for a good faith defense.  Thus, it would be impermissible for counsel to argue, or suggest through cross examination, that defendants' hope or expectation provides a defense to the fraud.

In the alternative, the Government would ask the court to consider a preliminary jury instruction.  As a general matter, the "everything would work out" defense veers perilously close to a jury nullification argument.  Thus, to the extent that the defendants are permitted to advance such arguments that they believed everything would ultimately work out, either through cross examination of Government witnesses or in the defendants' case, the jury should be instructed as to what constitutes a legitimate "good faith" defense relating to the negation of criminal intent or other cognizable defenses.  More specifically, the Government requests an instruction consistent with Sand Instruction 44-5 at 44-26 to the effect that:

> [T]here is another consideration to bear in mind in deciding whether or not
> the defendant under consideration acted in good faith. You are instructed
> that if the defendant participated in the scheme to defraud with the specific
> intent to defraud, then a belief by the defendant under consideration, if
> such belief exited, that ultimately everything would work out so that no
> one would lose any money, does not require a finding by you that that

>   defendant acted in good faith.  If the defendant participated in the scheme for the purpose of defrauding an entity and causing some financial or property loss to that entity or depriving them of information necessary to make a discretionary economic decision regarding the assets they controlled, then no amount of honest belief on the part of the defendant you are considering that somehow he or she could produce a result to pay people back or somehow they would not ultimately lose the money placed at risk, will excuse fraudulent actions or false representations by him or her.

*See also, e.g. United States v. Ingram*, 490 Fed. Appx 363, 367 (2d Cir. 2012) (upholding ultimate harm instruction); *United States v. Leonard*, 529 F.3d 83, 91-82 (2d Cir. 2008) (same); *United States v. Koh*, 199 F.3d 632 (2d Cir. 1999) (same); *United States v. Berkovich*, 168 F.3d 64 (2d Cir. 1999) (same).

By providing such an instruction prior to the start of evidence and prior to the defendants delivering opening statements, the Court can be assured that the jury will have the proper context for receiving any evidence or argument regarding this defense.  Waiting until the final jury instructions benefits neither party as an informed attentive jury furthers the ends of justice.

### III. Conclusion

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court grant its motion *in limine*.

Respectfully Submitted,
DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/

MICHAEL S. MCGARRY
Assistant United States Attorney
Federal Bar Number ct25713
157 Church Street, 25th Floor
New Haven, CT 06510
Tel. (203) 821-3700

JOHN T. PIERPONT, JR.
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv07973
John.Pierpont@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT 06510
Tel. (203) 821-3700

JOHN DURHAM
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct05087
John.Durham@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT 06510
Tel. (203) 821-3700

CERTIFICATION

I hereby certify that on August 26, 2016, a copy of the foregoing was filed electronically with the court and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                  /s/
                               JOHN T. PIERPONT, JR.
                               ASSISTANT UNITED STATES ATTORNEY